The next case for argument is 15-1327 in Re Schwarz. Mr. Reicherts, whenever you're ready. Please the court. Good morning. My name is Charles Rogers with the firm of Conley Rose, and I represent the appellants. The inventions at issue in this case relate to payment schedule enforcement methods, the best example being the enforcement of payment schedules, which is periodic payment due dates for vehicles purchased on credit. And the particular claims at issue, the independent claims 17, 25, and 35, recite several improvements, including starting with claim 17, I'll refer to that as future contingent disablement, which is the instruction to disable the product at a specified time unless an additional message is received. And the best example of that additional message would be a message confirming that payment has been made, which would then stop or defer disablement of a vehicle. The next claim, 25, is disablement. Well, let me short-circuit this. We've all read the briefs in their entirety, and we've all read the claims. So you've got several claims that are being challenged here on the anticipatory finding. Why don't you give us your best argument with respect to why the board was wrong with respect to each of those claims? Yes, so I'll go straight to claim 17. I'll go in numerical order. So claim 17 is what I refer to as future contingent disablement, and the claims recite a message that instructs the device to disable the product at a specified time in the event no additional messages are received by the device, and that's the important language at issue here. The claim requires the capability to not disable if an additional message is received. So another way to say this is disable unless another message is received. And the best example, of course, is payment. If there's a payment confirmation message that's received, then that either stops or defers that disablement that otherwise would occur at a specified time. And what we have here is the examiner in the rejections, the board on appeal, and now the board in affirming the rejections, and now the director on appeal. They completely ignore this additional messages limitation. They point to Bishop. This is a 102. Okay, I misunderstood that. I mean, my understanding was the dispute here was on the construction of the term at a specified time. No. Okay, it's not? No. Okay, what specific language in claim 17 is the dispute over? Everything after a specified time, and the reason why that's a dispute... ...is the construction of in the event no additional messages are received by the device? Well, I don't know if I'd call it a claim construction issue. I know in previous appeals there's a question of what's claim construction versus what's applying the construction. But in this case, what we have here is really just ignoring the claim altogether. I don't see any interpretation of this claim language. I don't see any application of this claim language to the prior art. It's just ignored. And the way that it is ignored by the examiner and the board is when they refer to Bishop as 102 in validating anticipation reference. They refer to the language, the disclosure in Bishop, that has disablement at a predetermined time of day. It also says, or after expiration of a predetermined time of day. But I view that all as the same. It's a predetermined time. And while one could consider that to be a disclosure of disablement at a specified time... ...there is nothing in the disclosure that has the rest of this critical language... ...which is not just a message instructing disablement at a specified time... ...but it is a message instructing for disablement at a specified time unless another message is received. And it's the language that says in the event no additional messages are received by the device. And once again, the best example of this in the spec is an additional message confirming that a payment has been made. Which makes sense because if there's an instruction to disable, for example, a vehicle at a specified time... ...is there a position that the PTAP completely ignored that limitation? Absolutely. Completely ignored it. And if you look at the language where the examiner makes the rejection and then the board affirms it... ...once again, what they refer to is the disclosure in Bishop that refers to... ...now it's actually referring to a warning, but let's just assume for the purpose of argument... ...that it's also talking about an instruction to disable. The main point is, even if it's an instruction to disable, it's at a predetermined time. And there's nothing, absolutely nothing in the entire disclosure of Bishop that says... ...that it's instruction to disable at a predetermined or specified time unless an additional message is received. And the way this works in the real world, and as described, the best example once again is a vehicle. The instruction message goes out to the device that's connected to the product, the vehicle, that says... ...disable at a specified time. Best example would be when the payment's due, or maybe the day after the payment's due. So that if a payment is missed, it's going to disable. In fact, it's going to disable even if a payment is made if there's not an additional message confirming that payment was made. And so that's why when you look at the way that this claim was rejected and the way that was affirmed by the board... ...there is just a complete glossing over, complete ignoring of this language, like it's read out of the claim. And it's a critical limitation in the claim, and it can't be ignored. It has to be addressed. And so while this board, while this court would affirm fact findings when they're supported by substantial evidence... ...this is a case where there's absolutely no fact finding to affirm at all. It's an absence of a fact finding on a critical issue. I want to move on to claim 25. Okay. So claim 25. Claim 25. This is another example of claim limitations being ignored. You have disablement and then re-enablement after payment is made. Payment by way of a credit card reader coupled to the product. I have a question for you about the credit card reader. Now, you don't contend that that's a novel concept. Credit card readers were known, right? Because in your patent classification, you just say you refer to a vehicle that could be equipped with a credit card reader not shown to take payment. So it's not like you think that that's something that people weren't aware of or wasn't in existence at the time where you were showing it, right? Correct. And of course, people were aware of credit card readers. One of our organizations understands what a credit card reader is. The key is that this is a new innovation in this line of products where you have a credit card reader coupled to the product, which has two aspects to it. And I'll refer to that as situs of payment and the means of payment. And the credit card reader is coupled to the product, which is the situs of the payment. So you know payment is made at the product as opposed to what you see in Palmer. You don't see any payment in Bishop, but it's understood what happened back then. In Palmer, there's payment at the store or mailing to the store. The device coupled to the product doesn't receive payment. It's just like a key. Once you pay, you get a key that you go unlock the door. You're still paying at the store either in person or by mail. And so this is an example, once again, where the way the rejection was made and the way it was affirmed by the board is they take the Palmer optical card reader, which is not payment. It's what you receive. It's like a store credit, right? So therefore, it's a credit card reader because what in effect is on that card is a store credit. So they say that reads broadest reasonable construction of credit card reader would cover something with a store credit on a card. Right. And the reason why that's incorrect fact findings, not supported by substantial evidence, is because the payment in that case is made at the store or by mailing to the store. It's not what the examiner refers to as the convenience of paying at the device. And so when you look at the way the rejection was made, it's an obvious misrejection. So there was some mention of motivation. And the examiner refers to the convenience that's provided. There's a primary reference that's Bishop and there's nothing about payment in there, not my credit card, really not by any way. And so there's a defect in Bishop. They bring in now Palmer to cure that defect. And so supposedly there's this motivation to combine for convenience and the convenience would be paying at the device by credit card. But when you look to Palmer, it actually teaches away from that. Palmer doesn't have payment at the device. It doesn't have the convenience that's provided by this invention by paying at the device. In Palmer, you go to the store to pay or you mail payment to the store. So Palmer actually teaches away. It doesn't cure this defect in Bishop. And so by the examiner finding, they didn't even find that there was a credit card reader. They just said the optical card in Palmer teaches a credit card. They missed the point completely of the convenience of paying at the device. And the specific – it's like they read out the claim language of payment by way of credit card reader coupled to the device. Your point is that even if you interpret the word credit card reader as broadly as they do, to include reading in something that's a store credit or a debit card or something like that, that still there's no motivation to combine because the secondary reference with its alleged credit card reader, nobody would turn to that to make it more convenient. Right. If it was so obvious to have this convenience of paying at the device, you wouldn't have Palmer talking about go to the store and make your payment there. Or even more inconvenient, mail your payment to the store and then wait to be mailed back or go pick up at the store this key that you then go use to unlock the device. What we have in this claim is true convenience, is paying at the device by credit card. And once again, it's like they completely read out the two aspects of this claim language, credit – payment by way of credit card reader coupled to the device. The situs of the payment and the means of the payment, neither one of those are in Bishop. That's admitted. And when you turn to Palmer, neither one of them are there either. It's just simply not what it's represented to be by the examiner and as affirmed by the board. You're into your rebuttal time. Do you want to spend a minute talking about Claim 35? I'll go ahead and use up a minute or two of my rebuttal time so I can at least close this out. Claim 35, this is not disablement, re-enablement, any of this. This is something completely separate. This is a second message. And the second message is a very specific marquish group of four selected particular types of notifications and instructions. And once again, these limitations are ignored. There is a rejection based upon language in Bishop where they're referring to warnings and notifications, advertisements. The notifications and advertisements are not linked to the payment schedule. That's the key because the first message is linked to a payment schedule. The second message is responsive to the first message. So you're talking about these notifications and instructions that are sent responsive to a payment schedule. And in the real world, one example would be payments come in due. So now you have a method where you can say, all right, this is for when you're coming into the store to pay. You know you're coming into the store to pay. The customer is coming in. So let's send them some advertisements, some notifications, instructions. Very innovative. Not done before. Everything they point to in Bishop is not tied to the payment schedule. And that's the key. There's an acknowledgement signal. That's internal. That's the device acknowledging parts to itself that signals are received or functions performed. It's internal. It's not an output message to a user, which is what these particular output messages are, notifications and instructions. And then finally, acknowledgement signals are certainly not in this Markush group. They're not notifications or instructions. They're just internal acknowledgments of signals within the device. And I'll preserve hopefully the rest of my time that I have. Thank you. May I please the Court? The Board's decision to affirm the rejections of Claims 17, 25, and 35 should be affirmed. The Board's finding of facts for each of the claims is supported by relevant evidence that a reasonable mind would find adequate. And that's the standard of review here. As this Court held in N. Ray Jolly. Can you jump right into Claim 17 and where it is that Bishop teaches the limitation that in the event no additional messages are received, by the device? Well, I will, Your Honor. Although I have to say that it's a little bit confusing for the office here today to hear Schwartz say that the claim, limitation, and dispute is what follows the language at a specified time. I mean, we understand that obviously that's part of it. But our understanding was that they were specifically, and I believe they say this repeatedly in their blue brief, that their interpretation of Bishop is that when messages are sent, that they're implemented immediately. And so the Director spent some time talking about the fact that at a specified time and predetermined times were taught in Bishop, which I think is relatively clear. I also think it's clear in Bishop that the fact that in the event an additional message isn't received is clear because we're talking about a real-world application that counsel was referring to. So in Bishop, it specifically says over and over again about disablement and enablement that you receive warnings. So you're driving your car. You haven't paid. Warning. You need to pay. Warning. You need to pay. Warning. You need to pay. If you don't pay, your device is going to be disabled. And that's precisely what Claim 17 says. In the absence of some additional message, for example, that payment's been received, the device will be disabled. Does Bishop expressly say that there could be another message sent saying that payment has been made and therefore this process will be interrupted? Well, I guess what the claim's saying is in the event a message isn't received, it's going to be disabled. And I think Bishop does teach that. But I think to the extent there's any ambiguity in some of the teachings that the examiner and the board pointed to in Bishop, I would point the court to Column 18, which I think provides the kind of clarity that you're looking for. And Column 18, and I'm reading at approximately line 40, and this is on A1107, it says, for example, prior to disabling the starter power mechanism in a piece of equipment, the warning device can provide audio warnings to the user of the equipment that the starter power supply mechanism of the equipment will be disabled unless the operator performs certain actions, e.g., required maintenance. And that lines up very nicely with what Claim 17 is saying. There was also some discussion in the brief that the starter mechanism or different aspects of Bishop doesn't teach,  So, because there's no timer or processor, it can't be predetermined time or can't be a time-disabled message that would permit some message in between being sent to stop disablement. But I think if you read Bishop, it discusses processes and timers being taught throughout, and it's certainly not limited to the warning system. Turning to Claim 25, which is the obviousness rejection with the combination of Bishop and Palmer, the examiner and the board clearly were looking to Palmer because Palmer is an example where you have a reader attached to a device. I mean, if you look at the claim, and I suppose they say, you know, this has never been done before in terms of having this reader combined to the device. I mean, here you have the examiner looking for analogous art, finding a rent-to-own situation, finding a device with a card reader attached to it, reading a card, enabling use of the product. I mean, it's right on point down the line. And then in the blue brief, they say, well, but that's an optical card reader. That's not a credit card reader. Well, you know, this is during examination. This is an application, not an issued patent. So they can clarify. I mean, not only did they not clarify, I think they've been ever backwards to not show any information about the credit card reader. How are they supposed to clarify? An optical reader is different than a credit card reader, right? So they clarified by calling it a credit card reader. Well, I think to you and me, a credit card reader has a plain meaning. But to a person of ordinary skill in the art, in this field, I think it would be more broad. So they could have, you think, they could have overcome this rejection by simply saying, by way of a credit card reader that does not include an optical reader? Well, I think they could. Well, for example, and I understand this is an example from today, not at the time the application was filed, but now we're using our cell phones to take pictures of credit cards to process credit card transactions. And that's, in effect, our phone is an optical card reader. And back in the day, also used as manual flatbed sliders, which were credit card readers that would slide over the phone and take an embossed impression. Is the key distinction credit card versus other kinds of cards? Not necessarily what kind of reader it is? Well, credit... Because all these mechanisms you're talking about are different technologies, but nonetheless, they all are reading a credit card. Well, I think it's two sides of the same coin, because the claim says credit card reader, and then you're asking, well, what does it read? I mean, what it reads informs the meaning of credit card reader, but we all know that credit card readers can read more than credit cards. They can read secure credit cards. I mean, the position of a talent is credit card reader has to read a card that includes a promise of future payment. This is a very narrow reading that is not supported in the specification. Credit card readers, as a person of ordinary skill in the art would understand, can read more than a credit card. It can read a gift card. It can read a debit card. It can read a secure... What evidence are you relying on that understanding from one of ordinary skill in the art? I'm... We're grasping, because there is no discussion either way in the specification. So, we're trying to conceive of what the broadest reasonable interpretation would be, and their opening position in their blue brief was that a credit card reader means reading a card that has a promise of future payment. And I think in rebuttal to that, what the office is saying, that a credit card reader can read a lot of different things, not just a card with a promise of future payment. That's too narrow. And, as we said, it would have been... Can I go back to my question? Sure. How could they have narrowed it to make it clear? I think they could have... There's one line in the specification discussing this, and what it goes on to say is a different embodiment than what's actually claimed. So, they could have very easily said the kinds of cards, I suppose, that payment was taken for, or could distinguish a credit card reader, the inner workings of it. I mean, there are different kinds of credit card readers and how they operate. But I think what the examiner was saying, which the office's position is, was reasonable under the circumstances with no express definition, is that when you have a reader coupled to the product that's reading a card that represents that payment has been made, to allow access to the device, to enable use of the device, that is a proper basis for an obvious misrejection of this particular claim. And, as we said, the applicant could have clarified the exact way its product works to get around that broad teaching. I also think the examiner was looking to Palmer because he wanted to show that this idea of enabling access to a product by way of a card reader is an old idea. I mean, Palmer's from 1987, and it's a very tiny leap to go from a card reader attached to a television to, as I think you said, Judge Stoll, credit cards. I mean, a credit card reader, there's nothing new or inventive about that. Yeah, but that's right. But the analysis would be a different one than we have here. You would say, okay, this is different. The differences between an optical reader and a credit card reader are so slight that one would have easily, one skilled in the art would have easily been able to substitute one for the other. That's kind of a fair analysis, right? But that's not the analysis we have here. That would be a better analysis. So the question is, was the analysis that happened here sufficient to sustain the rejection? And we think it's not as good as the analysis that you just made, but we think it's sufficient. I also wanted to respond that when appellant talked about there's a motivation to combine lacking, we don't read the appellant's brief to challenge the motivation to combine. I think really what it was challenging was, is it a credit card reader? Is it not a credit card reader? Is it using a credit card? Is it not using a credit card? That's the argument we thought that they were making. Turning to claim 35, this is the claim about sending the responsive message. The director's position is that providing the message, providing this responsive message is taught in BISHOP. And the examiner and the board said it was taught in two specific ways. First, they pointed to the teaching in column 5 that specifically talks about messages being sent and identifies notifications, instructions, and advertisements, which is virtually identical to the language used in claim 35. Then, when appellants said, well, it's not perfectly clear here that these messages are responsive to a first message, then the office said, well, throughout BISHOP there's discussion of acknowledgement signals and messages being sent in response. And then they said, well, true, there are messages sent in response, but then those messages don't have the content we want, which is an advertisement or an instruction. And I think the teaching of BISHOP as a whole clearly teaches what claim 35 is talking about. It's talking about responsive messages, and it also includes the content that one could argue is or is not required by the claim. And counsel for appellants said, well, this is something that's just very unique. It's never been done before. You get an advertisement or instruction when you pay for something. And I think that's just overreaching. I mean, we've all made purchases, and when you make a purchase, you know, you get a flurry of advertisements. I think of myself buying something at CVS, and the receipt keeps printing and printing and printing. And I think the idea that we're trying to stretch these claims to include old and obvious ideas, such as receiving information, is going too far here. We're looking at it as what was the date of the application here, because we're looking at it as of that timeframe, correct? Yes. So I think it was 2004. I'm not sure, Your Honor, what the priority date is, but there's no dispute that Bishop and Palmer proceed it. If Your Honors don't have any other questions, the office will conclude its argument. Thank you. The priority date is 2006. It's the time period we're looking at, February 7, 2006. Mr. Rogers, I just want to say, for the record, and it's not really relevant to your argument, but if you did get a patent on this and somebody did license it, I hope they carry a lot of insurance for the first time that they shut down an automobile by mistake. There's a computer error in payment, and the person rushes out to drive to the emergency room. Yes, and that's actually a good point, and I recognize that when I was first retained on this case. And there are mechanisms in there, and actually described in the patent, that talk about several pre-uses, emergency uses. So that issue has been addressed, and I'm glad that it has. Quickly, Claim 17. When you hear the director talk about, when you ask him to point to the portion of Bishop which has the disabled at a specified time, unless additional messages are received, they point to warnings. And they say, warning, warning, if you don't pay, the device will be disabled, then an instruction sent. That's completely distinct from what's in the claim, which is an instruction already sent, and there will be disablement unless a message is received such as confirming payment. So they're two separate different things. They're referring to warnings, warnings to the user. What the claim refers to and requires is instructions to the device. Totally separate things. Another issue is this reference to column 18. I'd ask that you recognize that as the new argument was not raised below, and under NRA IAMS should be not considered. But once again, if you're going to look at it, look at it and see that what they're referring to as column 18 is not instructions to the device to disable. Once again, it's warnings. Completely different. Another issue is on Palmer. They keep talking about optical card reader. We're going to take a couple new thoughts because your time has run out. So give us a final thought on Palmer. Final thought is claim 35. Look at the requirement that the messages, the Marquish Group claims need to be sent responsive to a trigger event associated with the payment schedule. So think about the example where we know you're coming in for a payment, so we're going to send you these notifications. That is not anywhere mentioned in BISHOP. And so to close, we'd ask that you reverse. And that's it. Thank you. Thank you. We thank both parties. The case is submitted. That concludes our proceedings. All rise. The Honorable Court is adjourned until tomorrow morning. It's an o'clock a.m.